[File No. 6004.]

MARY ELIZABETH DONAHUE, a Minor by her Guardian ad Litem Frank Donahue, Respondent, v. HOMER E. BOYNTON, Appellant.

(242 N. W. 530.)

Opinion filed February 18, 1932.   Rehearing denied April 23, **1932.**

*B. A. Dickinson* and *H. E. Johnson,* for appellant.

*E. R. Sinkler* and *G. O. Brekke,* for respondent.

BURR, J.   The complaint charges the defendant with negligently leaving on premises under his control a barrel with explosives therein, so that children could and did play with it, and that as a result there was an explosion in which the plaintiff was severely injured.

When plaintiff rested the defendant moved for dismissal of the action, renewing the motion at the close of the case.   The jury returned a verdict in favor of the plaintiff upon which judgment was entered. The defendant moved for judgment notwithstanding the verdict or for a new trial, basing the same upon the insufficiency of the evidence to sustain the verdict, rulings of the court in the admission of evidence, and certain alleged errors in the instructions.   This motion was denied, and from the order denying the new trial and from the judgment the defendant appeals upon the same specifications of error.

For some years prior to 1927 the defendant was manager of an automobile accessory establishment and dealt also in gasoline and oil.   He was the owner of a lot 150 feet in length from east to west.   On each end of this lot was a residence and near the middle, on the south line of the lot was a double garage, one half of which was rented.

By January 1, 1927 defendant had ceased business and in the fall of the year he stored some tires and other personal property in the half of this garage over which he retained control.   He brought three empty steel barrels, one of which was of about fifty gallon size.   Out of one barrel he made an incinerator.   The other barrels were left on the outside of the garage—the only use the defendant made of them was that at one time he used them as scaffold supports while painting the houses. Barrel A. had a faucet in it, and the other—Barrel B.—the one that exploded—had an open bung hole, though there is testimony that this was the barrel with the faucet in it.

The defendant secured tenants for the houses and half of the garage. He left the State in the fall of 1928, came to Williston in June of 1929, returned to Minot in August 1929, remained there until November

of that year, and then lived in Wisconsin and Minnesota until October 1930.

During the time the barrels were on the premises the children were in the habit of playing with them—rolling them around, standing on them and otherwise making use of them. It is doubtful if the defendant knew about this, though he knew children played in the adjoining alley and street.

Four boys, aged ten, twelve, thirteen and fourteen years respectively, testified that in 1929 and 1930 they were in the habit of playing with the barrels, putting lighted fire crackers into barrels A. and B. to hear the report, and this continued from time to time until about three weeks prior to the second day of July, 1930. They told the approximate number of times they had so played, placing fire crackers therein, and that during all of this time the barrels were empty. They testified that no sound of swirling came from them when they were rolled around, that they put lighted fire crackers into both barrels to hear the sound, that the only result was the explosion of the fire cracker, and there was no difference in the sound which came from the barrels. The testimony showed the difficulty they had in getting even small fire crackers into barrel A. because of the faucet. The boys said they put the larger fire crackers in barrel B. and yet the only explosion was the explosion of the fire crackers.

There is testimony showing the activity of defendant in securing this testimony, and the methods he employed.

On July 2, 1930, the plaintiff, a girl of about seven years of age, was sitting on a log in the rear of the lot where her family lived, which lot abutted defendant's lot, and from fifteen to thirty feet from barrel B. Two or three small boys—about ten years of age—were playing there at that time and one of them dropped a lighted fire cracker into barrel B. There was an immediate explosion which lifted the barrel some twenty-five feet into the air, broke it open at one end, spread fire on the ground and the top of the garage and directed a stream of fire toward and over plaintiff so that she was seriously burned over her entire body. Witnesses testified there was a strong odor of gasoline or naphtha coming from her clothes immediately after the accident, and from the immediate vicinity of the fire.

A little boy of about seven years who witnessed the dropping of the

fire cracker into the barrel, was slightly burned. This boy testified he saw a boy put the fire cracker in the barrel at the time of the explosion. He was the only one to testify to this. He was not asked who the boy was or even if he knew him. He had given the names of some boys playing around there, but neither side asked him in regard to this matter. So far as the record shows there was no attempt made by either side to ascertain who put the fire cracker into the barrel, nor is there anything to show these two boys who were doing it were in any way injured, or whether they put in an explosive themselves at that time to see what the effect would be.

The defendant returned to Minot in October, 1930 and thereafter. there was some conversation between plaintiff's parents and the defendant in which the parents claimed the defendant admitted that while in business he had put some crank case drippings in one of these barrels from time to time. This statement was denied by the defendant and one other witness. Even if the jury believed the version given by plaintiff's parents, yet it is clear this must have been prior to 1927 and there is no testimony showing these drippings were placed in barrel B. Defendant's testimony is that all barrels were empty when brought to the premises; that about ten years before he had kept cylinder oil in it, but nothing since.

Much is said regarding the rule relating to attractive nuisances; but we can not hold that as a matter of law the storing of empty oil barrels at a private garage, or even storing small quantities of gasoline at a private garage constitutes a nuisance per se. Many a landlord builds a garage on his premises for the accommodation of his tenants, and a householder for his own accommodation. Of necessity he must have some quantity of oil and even gasoline there. A practice so universal, so necessary and so convenient can not be said to be a nuisance per se.

The doctrine that leaving explosives accessible to children may become negligence is an entirely different proposition. Plaintiff refers to the general rule "that a person leaving exposed and unguarded on his premises an explosive which is found by trespassing children is liable for any injuries resulting from its explosion," as set forth in 11 R. C. L. 664. However this is dealing with such explosives as firearms, dynamite, etc. The distinction is made between explosives and substances which are capable of being exploded such as gasoline, kerosene,

etc. The keeping of the latter in proper receptacles, in a proper place, and where there is no reason to anticipate meddling and with no guarding against trespassing children can not be said to be negligence. However, in the case at bar it is the theory of the plaintiff that the gasoline or naphtha was not "stored;" that it was carelessly left and abandoned; that the defendant knew children were playing there or in the immediate neighborhood, and thus should have anticipated they would roll the barrels and otherwise make use of them. We do not say the testimony shows this to be the action of the defendant, but if the defendant did abandon gasoline or naphtha outside of the garage without taking precautions to guard against the acts of children who, he knew, would likely play with the barrels, it was proper to submit such facts to the jury to determine whether this was negligence on the part of the defendant.

The defendant had left the State in November of 1929 and did not return until October, 1930. If the boys told the truth, there was no explosive in barrel B. up to a period within three weeks prior to the accident, or until some time in the forepart of June. Therefore, whatever explosive was in the barrel must have been put therein thereafter. It could not have been put in by the defendant for he was not in the State. Consequently whatever crank case drippings were put in a barrel by the defendant—assuming this to be a fact—could not have been in the barrel when the boys were dropping fire crackers into it, but must have dried out and evaporated. That some one put an explosive therein is conclusively settled by the explosion itself, for the thing speaks for itself.

Even if there was evidence to show the defendant had left a barrel containing some car drippings so that children playing around could have been injured thereby, nevertheless there is abundance of evidence showing that such drippings could not have caused the explosion because of the action of the boys at earlier times in exploding fire crackers in the barrels, and there is a total lack of evidence showing defendant knew gasoline or other explosive oil was put therein afterwards. We are of the opinion the evidence shows that whatever explosive was in there must have been placed there between the forepart of June and the time of the explosion, and without the knowledge of the defendant, and thus the evidence is insufficient to sustain the verdict.

Plaintiff cites the rule that "a motion for a new trial on the ground of the insufficiency of the evidence to support the verdict invokes the discretion of the trial court," and the trial court having passed upon the motion on this ground and denying it the order should not be reversed.

It is true that an order of the court denying "a new trial rests largely in the discretion of the trial court" and the appellate court will not interfere unless an abuse of judicial discretion is shown. Huber v. Zeiszler, 37 N. D. 556, 560, 164 N. W. 131. This is applicable where the ground alleged is the insufficiency of the evidence. Martin v. Parkins, 55 N. D. 339, 213 N. W. 574. In such case we review the evidence to determine whether the trial court acted within its discretion. Ibid.

A distinction however is made between cases where the trial court, in the exercise of its discretion, grants a new trial, and where a new trial is denied. In the former case a stronger showing must be made in order to secure a reversal. Kohlman v. Hyland, 56 N. D. 772, 219 N. W. 228; Shuman v. Lesmeister, 34 N. D. 209, 158 N. W. 271.

There is a distinction also between insufficiency of evidence and a total lack of evidence on some vital question. If the trial court overlooks this distinction it can not be said to be a reasonable exercise of discretion, for the discretion must be a legal discretion. Kohlman v. Hyland, supra.

In this case there is a total failure of proof showing that any gasoline was left in the barrels, or placed in the barrels by the defendant at any time. His own testimony is that it was cylinder oil. This is the only direct testimony there is. The conversation between defendant and the parents of the plaintiff, accepting the version of the latter, is that it was crank case drippings and the plaintiff assumes that some gasoline could have got mixed in with these drippings. On this slender assumption, and on plaintiff's version of the conversation had in October 1930 regarding incidents occurring prior to January 1927, plaintiff bases the theory that defendant left gasoline where children could reach it, and play with it. The ruling of the trial court also ignores completely the testimony of the boys that three weeks prior to the explosion they had dropped lighted fire crackers into the barrel and there was no explosion other than the explosion of the fire crackers.

True the jury heard this testimony and must have ignored it, and the court, judging by its memorandum opinion, seems to have some impression that the activity of the defendant in securing the testimony of these boys affected their credibility, but even ignoring the testimony of the boys there is no evidence that these barrels ever contained gasoline at a time when defendant had control of them. We are constrained to believe the court did not exercise a legal discretion in denying a new trial.

However we do not hold the court was in error in denying a motion for judgment notwithstanding the verdict.

"To justify an order for judgment notwithstanding the verdict, the record must affirmatively show, not only that the verdict is not justified by the evidence, but it must also appear that there is no reasonable probability that the defects in the proof necessary to support the verdict may be remedied on another trial." Meehan v. Great Northern R. Co. 13 N. D. 432, 101 N. W. 183; Welch v. Northern P. R. Co. 14 N. D. 19, 103 N. W. 396; Houghton Implement Co. v. Vavrosky, 15 N. D. 308, 109 N. W. 1024; Kerr v. Anderson, 16 N. D. 36, 111 N. W. 614; Rieck v. Daigle, 17 N. D. 365, 117 N. W. 346; Webster v. McLaren, 19 N. D. 751, 123 N. W. 395; First State Bank v. Kelly, 30 N. D. 84, 152 N. W. 125, Ann. Cas. 1917D, 1044.

Defects in the testimony may be remedied on another trial and therefore it was proper to deny the motion for judgment notwithstanding the verdict.

In view of a new trial it is necessary to refer to the specifications of error based upon the admission of testimony. Error is assigned in the admission of testimony regarding practices of the defendant during the time he was in business which practices are said to show a disregard of the rights of others. This testimony related to a time remote from the accident, to different practices, and to a different place. It was clearly irrelevant and prejudicial.

The other matter deals with alleged error in permitting plaintiff to examine defendant as to mortgages placed upon his property upon his return to the State in October, 1930. The record shows the summons and complaint in this case was served upon defendant at that time, and immediately thereafter he placed mortgages upon his property. It was proper to show this. See State v. Anderson, 58 N. D.

721, 227 N. W. 220, 65 A.L.R. 1304; Harmon v. Haas, 61 N. D. 772, 241 N. W. 70, decided at this term. The defendant had the right to explain the giving of these mortgages if he saw fit, to show they were given in good faith.

It is not necessary to pass upon the alleged errors in the instructions as they may not arise on a new trial.

Because of the insufficiency of the evidence to justify the verdict, and the error in the admission of testimony, the order denying a new trial is reversed and a new trial ordered.

CHRISTIANSON, Ch. J., .and NUESSLE, BIRDZELL, and BURKE, JJ., concur.